THE ATTORNEY GENERAL
OF TEXAS



December 28, 1988

JIM MATTOX
ATTORNEY GENERAL

Mr. Alfred F. Hurley
Chancellor
University of North Texas
Texas College of Osteopathic
  Medicine
P. O. Box 13737
Denton, Texas   76203-3737

Opinion No.  JM-999

Re:  Use of Higher Education
Assistance Fund established
by article VII, section 17,
of the Texas Constitution to
renovate facilities at the
University of North Texas
(RQ-1475)

Dear Mr. Hurley:

You ask several questions involving the interpretation of article VII, section 17, of the Texas Constitution, which creates the Higher Education Assistance Fund. Article VII, section 17, of the Texas Constitution was adopted by the voters in 1984. See H.J.R. 19, § 1, Acts 1983, 68th Leg., at 6701. It appropriates $100 million per year for a college construction fund for 26 specified institutions of higher education including the University of North Texas. The eligible institutions may use these funds

> for the purpose of acquiring land either with or without permanent improvements, constructing and equipping buildings or other permanent improvements, major repair or rehabilitation of buildings or other permanent improvements, and acquisition of capital equipment, library books and library materials.

Tex. Const. art. VII, § 17(a).

This provision also permits the governing board of each institution to issue bonds and notes for most of the purposes for which the fund may be used. Id. § 17(e). The institutions designated to benefit from the fund may not, as a general rule, receive additional funds from the general revenue of the state "for acquiring land with or without permanent improvements, for constructing or equipping buildings or other permanent improvements, or for major repair and rehabilitation of buildings or other permanent

improvements."   <u>Id.</u>  § 17(j).  There  are  exceptions   for appropriations made to replace an uninsured loss due to fire or natural  disaster and  for appropriations  by  two-thirds vote of the legislature in cases of demonstrated need.

Your   questions   concern   the   interpretation   of subsection  (f)  of   the  constitutional  provision   which restricts the use of the Higher Education Assistance Fund as follows:

> (f)  The  funds  appropriated  by   this section may not  be used for  the purpose  of constructing,   equipping,   repairing,    or rehabilitating buildings  or other  permanent improvements that are to be used for  student housing,   intercollegiate   athletics,    or auxiliary enterprises.

Tex. Const. art. VII, § 17(f).

Your first question is as follows:

> May  the  University  use  Higher   Education Assistance Fund (HEAF) dollars to <u>renovate</u>  a portion of a  building used  for <u>both</u> educa- tional  and  general   (E&G)  and   auxiliary purposes when that portion which is renovated with HEAF  funds  is  a separate  area of  the building and  is  used  <u>exclusively</u>  for  E&G purposes 100% of  the time;  <u>e.g.</u>,  renovate available space  in a  dormitory into  class- rooms, labs, or faculty offices?

The educational and general functions for which   state colleges and universities receive legislative appropriations are defined  at length  in  the instructions  for  preparing and submitting  appropriations  requests  published  by  the Legislative  and  Executive  Budget  Offices.  <u>See</u>  General Appropriations Act, Acts 1987,  70th  Leg.,  2d C.S.,  ch.  78, at 726.  Included are  expenditure items relevant to  giving instruction, administering  the institution,  and  providing support  necessary  to  operate  an  institution  of  higher education.  Excluded are student services for which fees are authorized under section 54.503 of the Texas Education  Code and all auxiliary  enterprise operations  and costs  related thereto.  Governor's  Budget  Office  &  Legislative  Budget Office,  Detailed Instructions for Preparing and  Submitting Requests for  Legislative Appropriations for  the  Biennium Beginning Sept. 1, 1987,  Supplement A, "Definitions of  the

Elements of Institutional Costs."   See also V.T.C.S. art. 6252-5c, § 1(1) (defining "auxiliary enterprise" as a business activity conducted at institution of higher education that provides a service to institution but is not funded through appropriated funds).

A former constitutional provision also designated as article VII, section 17, was adopted in 1947 and repealed in 1982. See S.J.R. No. 4, Acts 1947, 50th Leg. at 1184; H.J.R. No. 1, § 3, Acts 1982, 67th Leg., 2d C.S., at 52. This provision established a state property tax to finance construction at 17 universities. The tax was used to create a special fund

> for the purpose of acquiring, constructing and initially equipping buildings or other permanent improvements at the designated institutions of higher learning provided that none of the proceeds of this tax shall be used for auxiliary enterprises . . . . (Emphasis added.)

S.J.R. No. 24, Acts 1965, 59th Leg., at 2197. The under-lined language was added by a 1965 amendment to former article VII, section 17, of the Texas Constitution. It imposed a restriction on the expenditure of constitu-tionally authorized tax revenues similar to the restrictions currently imposed by subsection (f) of article VII, section 17, of the Texas Constitution. Opinions of this office which discussed the restriction under the former version of article VII, section 17, assist us in answering your first question.

The phrase "buildings or other permanent improvements" as used in former article VII, section 17, includes a wing on a building or other permanent structure. Attorney General Opinion V-1427 at 8 (1952). Attorney General Opinion H-1248 (1978) established that a stadium and a special events center for intercollegiate athletic events were auxiliary enterprises within the constitutional restriction. It then considered whether the constitutionally authorized tax funds could be used to pay for a portion of a stadium or special events center designated for educational purposes, such as classrooms. The opinion stated as follows:

> We believe that these funds may be used to fund a part of a building, if there is actually a separation of auxiliary and educational uses. How this actually will be

accomplished in a given  case will depend  on
facts as to the  design and operation of  the
building.   Since  we  do  not  resolve  fact
questions in the  opinion process, we  cannot
give a comprehensive answer to your question.

Attorney General Opinion H-1248 at 2 (1978).

The University may use Higher Education Assistance Fund
dollars to construct, repair,  or rehabilitate buildings  or
other permanent improvements, which  may include a wing,  an
addition, or other  portion of  a building  used for  educa-
tional purposes. Tex.  Const. art.  VII, § 17(a);  Attorney
General Opinion  H-1248  (1978); see also  Attorney  General
Opinion MW-101 (1979).  Accordingly, these funds may be used
to renovate a separate portion of a building into facilities
used exclusively for educational and general purposes,  such
as classrooms,  labs,  or  faculty  offices.   Although  the
renovated portion  of the  building  was formerly  used  for
auxiliary purposes and the rest of the building will be used
for auxiliary purposes in the future, there is no  violation
of subsection (f) of article  VII, section 17, of the  Texas
Constitution.

Subsection (f) bars the use of constitutional funds  to
construct,  repair  or  rehabilitate  buildings  "or  other
permanent improvements that are to be used for  student
housing,  intercollegiate  athletics,  or  auxiliary  enter-
prises." Id. § 17(f) (emphasis  added). This  restriction
applies to a building or a permanent improvement other  than
a building that  will  be  used in the  future for  auxiliary
purposes.  As  we have  already  pointed out,  a  "permanent
improvement" may  be  a  wing  or other  separate part  of  a
building.  In  this case,  it is  the part  of the  building
renovated  for  education  and  general  purposes.   This
permanent improvement will  not  be used  for  any  of  the
purposes set out in article VII, section 17(f) of the  Texas
Constitution.

Your second question is as follows:

May a university use HEAF funds to renovate a
portion of a facility  used for both E&G  and
auxiliary purposes  when the  purpose of  the
renovation  and  the  ultimate  use  of  that
portion of the facility which is renovated is
exclusively used  for  educational  purposes;
e.g., when fold-up desk  arms are added to  a
university's  theatre  to  provide  writing

surfaces so that the theatre may be used as a large classroom for a portion of a day?   E&G appropriations are used to support the facility partially because  of its  instructional (E&G) use.

You inform us  that the University  of North Texas  has used HEAF funds to install fold-up desk arms on the seats in its University Theatre.  The theatre was previously used for auxiliary purposes 100% of the time but is now reserved  for several hours each weekday for use as a classroom.  You also state that the fold-up desk arms have no use other than  for instructional purposes.  We  will assume  that these  statements are  correct  and  base  our  answer  to  your  second question on them.

We believe that the literal language of subsection (f) of article  VII, section  17, prevents  this expenditure  of HEAF funds.  The  funds appropriated  by the  constitutional provision "may not be  used for . . . equipping, repairing, or rehabilitating  buildings  or  other  permanent  improvements that are to be used for . . . auxiliary  enterprises." Although the desk arms themselves may be devoted exclusively to educational purposes, they were added to a facility  used in part  for auxiliary  enterprises.  In  our opinion,  they were used  to  equip or  rehabilitate  a building  or  other permanent  improvement  "to  be  used  for . . .  auxiliary enterprises."   The  expenditure  is  therefore  within  the subsection (f) prohibition.

Your third question is as follows:

May a university use HEAF dollars to renovate a portion of a building used for both E&G and auxiliary purposes, when auxiliary funds  and HEAF funds share proportionately the cost  of the renovation;  e.g., replace a roof  on  a building that is occupied 50% by E&G and  50% by  an  auxiliary  enterprise?  Accordingly, HEAF funds are  used to  pay for  50% of  the roof replacement and auxiliary funds pay  for the other 50%.

Your question concerns replacing the roof on a building which is devoted in part to  dormitory space and in part  to education and general purposes.  The subsection (f) restriction is  formulated  in  terms of  tangible  structures  and facilities,  specifically,  "buildings  or  other  permanent improvements."   We believe that it permits the use of  HEAF

funds only  on facilities  that are  physically distinct  in some degree  from  facilities for  student  housing,  inter- collegiate  athletics,  or  auxiliary  enterprises.  It therefore  does  not  permit  combining  HEAF  funds  with auxiliary  funds  to  finance  a  unified  renovation  to  a building used  both  for  an auxiliary  enterprise  and  for educational and general purposes.  Separating the sources of funding  as  an  accounting  matter  will  not  satisfy  the requirement  of  physical  separateness  implicit  in  the language of subsection (f).

Your fourth question is as follows:

> May a  university use  HEAF monies  to  share proportionately with auxiliary  funds in  the cost of an item of <u>capital equipment</u> used for <u>both</u> E&G  and  auxiliary purposes;  <u>e.g.</u>,  to install a lighting  system in the  University Theatre when the theatre  is used as a  large classroom for  a  portion of  each day?  In conformance with  State law,  E&G  appropria- tions may be,  and are, used  to support  the facility because of its instructional use.

Subsection (f) of article VII, section 17, of the Texas Constitution provides that the constitutionally appropriated funds may not be used to equip buildings or other  permanent improvements that are to be used for auxiliary  enterprises. As our answer to your third question indicates, the language of subsection (f) prevents  the use of  HEAF funds to  equip buildings or improvements which are not physically  distinct from auxiliary enterprise  facilities.  Where the  equipment is used for both auxiliary  and for educational and  general purposes, the requirement of physical separation is not met. Consequently, HEAF funds  may not be  used for the  combined purpose inquired about in your fourth question.

You inform us that appropriations for educational  and general purposes are used to support the facility because of its instructional use.  This information does not change our conclusion that subsection (f) prohibits the expenditure  of HEAF funds in partial payment for an item of capital  equip- ment used for  educational and general  purposes and for  an auxiliary enterprise.  State colleges and universities  have statutory  authority  to  establish  and  operate  auxiliary enterprises.  <u>See, e.g.</u>,  Educ.  Code  § 54.503  (student services); Educ. Code, ch. 55 (financing permanent  improve- ments including student housing); Attorney General  Opinions H-1312 (1978); H-513 (1975);  Letter Advisory No. 6  (1973).

H-1312 (1978); H-513 (1975);  Letter Advisory No. 6  (1973). The applicable  statutes and  appropriations act  provisions control the  expenditure  of legislative  appropriations  by state colleges and universities.  <u>See, e.g.</u>, Letter Advisory No.  50  (1973).   We  are  unaware  of  any  constitutional provision prohibiting  the use  of educational  and  general funds to operate facilities  used for auxiliary  enterprises as well as for educational and general purposes.

Your final question is as follows:

> May the University  use <u>bond</u> proceeds  gained
> through any future  HEAF bond  sales to  pur-
> chase <u>capital equipment</u>  for an E&G  building
> which has not  been newly constructed,  <u>e.g.</u>,
> use HEAF bond proceeds to buy capital  equip-
> ment for a ten year old E&G building used for
> research and instruction?

You ask about the future use of bond funds to  purchase "capital equipment,"  but in  discussing this  question  you refer to both "equipment" and "capital equipment."   Article VII, section 17, of the Texas Constitution uses both  terms. We will  address  the significance  of  these two  terms  in answering your question.  We have not been asked whether any particular item of equipment is "capital equipment," and  we do not address any such question.

Subsection (a) of  section 17 states  the purposes  for which the funds it appropriates may be used:

> acquiring land  either with  or without  per-
> manent  improvements,  constructing  and
> <u>equipping</u> buildings  or other  permanent  im-
> provements, major repair or rehabilitation of
> buildings or  other  permanent  improvements,
> and acquisition of <u>capital equipment</u>, library
> books and  library  materials.   (Emphasis
> added.)

Tex. Const. art. VII, § 17(a).

Subsection (e) of section  17 defines the authority  of the eligible institutions to issue bonds:

> Each governing board authorized to  parti-
> cipate in  the distribution of  money  under
> this section  is  authorized  to  expend  all
> money  distributed  to  it  for  any  of  the

> purposes enumerated in Subsection (a). In
> addition, . . . such governing board may
> issue bonds and notes for the purposes
> of . . . acquiring land either with or
> without permanent improvements, constructing
> and _equipping_ buildings or other permanent
> improvements, and for major repair and
> rehabilitation of buildings or other per-
> manent improvements, and may pledge up to 50
> percent of the money allocated to such
> governing board pursuant to this section to
> secure the payment of the principal and
> interest of such bonds or notes. (Emphasis
> added.)

Tex. Const. art. VII, § 17(e).

Subsection (a) of section 17 permits the constitutional appropriation to be used for constructing and equipping buildings or other permanent improvements, and for the acquisition of capital equipment, library books and library materials. Subsection (e), in contrast, permits the issuance of bonds for constructing and equipping buildings or other permanent improvements, but does not authorize the issuance of bonds to acquire capital equipment. The term "equipment" describes a category which includes "capital equipment"; thus, the proceeds of bonds issued under section 17(e) of article VII for "constructing and equipping buildings or other permanent improvements" may be used to acquire the capital equipment necessary to equip the building. The absence of authority to issue bonds for "capital equipment" alone indicates that equipment may be purchased only in connection with constructing a building or other permanent improvement, and not as a separate item to be installed in an existing structure.

Our interpretation of the constitutional provision is consistent with the interpretation given the former version of article VII, section 17 by the opinions of this office. The former version of article VII, section 17, established a fund "for the purpose of acquiring, constructing _and_ initially equipping buildings or other permanent improvements at the designated institutions . . . ." S.J.R. No. 4, Acts 1947, 50th Leg. at 1184 (emphasis added). Attorney General Opinion V-931 (1949) determined that the constitutional fund could not be used to equip space in an existing building as a college printing shop to be operated in connection with the Department of Journalism. The space had "never been equipped, initially or otherwise, for that

purpose."   Attorney General Opinion V-931 (1949).   The opinion stated as follows:

> Article VII, Section 17, was intended to provide for the construction or acquisition of buildings and other permanent improvements and for the initially equipping of <u>such</u> buildings or permanent improvements.   There is no provision in the amendment for 'initially equipping' existing buildings . . . .
>
> It will be noted also that the amendment does not say 'for the purpose of acquiring, constructing <u>or</u> initially equipping buildings . . .' It uses the conjunctive word 'and' rather than the disjunctive word 'or.' (Emphasis in original.)

Attorney General Opinion V-931 at 3 (1949).

We believe Attorney General Opinion V-931 controls the answer to your question.  Although the modifier "initially" does not appear in the present version of article VII, section 17, this omission is not significant because Attorney General Opinion V-931 did not rely on that term to reach its conclusion.  The present constitutional provision uses the conjunctive "and" rather than the disjunctive "or." Bonds may be issued under subsection (e) of section 17 for "constructing <u>and</u> equipping buildings or other permanent improvements . . . ." Tex. Const. art. VII, § 17(e). Accordingly, the University may not use the proceeds of bonds issued under article VII, section 17(e), to purchase capital equipment for a building which has not been newly constructed.

### S U M M A R Y

Funds appropriated by article VII, section 17, of the Texas Constitution may be used to renovate a portion of a building used for both educational and general purposes and auxiliary purposes, if the renovated portion is a wing, addition, or other physically distinct part of the building and if it is used exclusively for educational and general purposes.

Section 17(f) of article VII prohibits the expenditure of such funds to construct,

equip, repair, or rehabilitate buildings or other permanent improvements to be used for student housing, intercollegiate athletics, or auxiliary enterprises. Subsection (f) prevents the use of the constitutionally appropriated funds to assist in renovating a building or other permanent improvement which is used part of the time for educational and general purposes, and part of the time for auxiliary purposes. The constitutional fund may not be applied toward the purchase of capital equipment used for educational and general purposes and for auxiliary purposes.

The proceeds of bonds issued pursuant to article VII, section 17 of the constitution may not be used to purchase capital equipment for an existing educational and general building.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Susan L. Garrison
Assistant Attorney General